STATE of Missouri ex rel. FARMLAND
INDUSTRIES, INC., Relator,

v.

Honorable Kenneth ELLIOTT, Judge of
the Circuit Court of Clay County, Missouri, Division Two, Respondent.

No. KCD 29660.

Missouri Court of Appeals,
Kansas City District.

Dec. 5, 1977.

Motion for Rehearing and/or Transfer
Denied Dec. 27, 1977.

Robert B. Best, Jr., Kansas City, for relator; Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

Bernard L. Balkin, Keith E. Witten, Kansas City, for respondent.

Before SWOFFORD, C. J., and SHANGLER, DIXON, PRITCHARD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Judge.

Before the respondent Circuit Judge, plaintiff Farmland Industries, Inc. sued defendant Lyle Farms, Inc. for damages arising from alleged breach of contract and it also sued the defendants Harry M. Jones and Sally V. Jones for damages under their agreement to guarantee performance by Lyle Farms. "Long arm" service was obtained on all three defendants under Section 506.500 RSMo 1969. Defendants filed motions to quash service on the ground that none of them transacted any business in the State of Missouri and none of them had entered into any contract in this State. Defendants also filed a motion to stay proceedings until a certain pending action in the United States District Court of New Jersey could be finally disposed of and determined. After the filing of affidavits and the taking of testimony, respondent sustained defendants' motion to quash summons and service of process and on his own motion dismissed Farmland's petition on the grounds of forum non conveniens. Farmland thereupon filed a petition as relator in this court for a writ of mandamus to reinstate the petition and service of process, and a preliminary writ was issued. That preliminary writ is now made peremptory.

The skeletal facts are as follows. Harry M. Jones and his wife Sally V. Jones are both residents of New Jersey. They are the principal stockholders and he is the managing officer of a number of corporations, including Lyle Farms (the corporate defendant involved here) and Lyle Foods, Inc., both of which are New Jersey corporations and neither of which maintains any office in the State of Missouri. Farmland is a Kansas corporation with its principal office and place of business in Kansas City, Missouri.

In 1974, Farmland and one of its subsidiaries entered into a contract with Lyle Foods under which the latter undertook distribution of Farmland's line of "frozen food entrees." The two Jones guaranteed performance of that distribution contract by Lyle Foods. Then, about a year later, in 1975, Farmland entered into a new Marketing Agreement with Lyle Farms under which the latter corporation undertook the distribution of Farmland's line of dry dog food, and the two Jones executed a separate guarantee of that agreement. Both the dog food Marketing Agreement and the guarantee of it bore date of March 6, 1975. There is sharp disagreement between the parties as to whether the last signature to these agreements was affixed in New Jersey or in Missouri.

Disputes later arose between the parties which led to the filing of a lawsuit by Lyle Foods concerning the frozen food entree distribution agreement in the United States District Court for the District of New Jersey on July 30, 1976. Farmland and its subsidiary filed answer and counterclaim over the same distributorship in the New Jersey federal court and then in the following month filed suit on the same subject matter against Lyle Foods and the two Jones in the United States District Court for the Northern District of Illinois. Other facts important to the decision of this case will be stated at later appropriate points in this opinion.

Farmland's Points Relied On in this court may be summarized thus: (1) Respondent improperly quashed service on Lyle Farms because that defendant both transacted business (Point I) and made a contract (Point II) within Missouri. We hold that Lyle Farms did transact business in Missouri and therefore find it unnecessary to decide Farmland's Point II. (2) Respondent improperly quashed service on the individual defendants because they transacted business (Point III) and made a contract (Point IV) in Missouri. We hold that the individual defendants transacted business in Missouri and therefore find it unnecessary to decide Farmland's Point IV. (3) Respondent improperly dismissed the petition on the grounds of forum non conveniens because he had already divested himself of jurisdiction by sustaining defendants' motion (Point VI) and because the doctrine cannot lawfully be applied to this factual situation (Point VII). We sustain Point VII and therefore find it unnecessary to rule on Farmland's Point VI. (4) Mandamus is an appropriate remedy with respect to the order to quash service (Point V) and as to the order dismissing the petition on the ground of forum non conveniens (Point VIII). These points can be bypassed for the reason to be stated below.

## I.

### Transaction of Business in Missouri by Lyle Farms

Defendants challenge all of Farmland's Points except its Point I. This can be taken as an implied concession by them that the corporate defendant did transact business within Missouri under the provisions of Section 506.500–1(1).

■ However that may be, Lyle Farms clearly did transact business within the meaning of that statutory provision. Defendant Harry M. Jones testified that the first discussion with respect to him or any enterprise controlled by him undertaking distribution of dog food occurred in Kansas City, Missouri, on about June 24, 1974. On at least seven other occasions thereafter he and sometimes other representatives of Lyle Farms came to Kansas City to further negotiate concerning this projected distrib-

utorship. These meetings were followed by correspondence, all of which eventuated in the Marketing Agreement dated March 6, 1975, now in suit. Any one of the eight conferences mentioned would alone have sufficed to constitute the transaction of "any" business in Missouri sufficient to sustain long arm service. *State ex rel. Peoples Bank v. Stussie*, 536 S.W.2d 934 (Mo.App. 1976); *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 331 F.Supp. 1215 (D.C. Mo.1971); *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241 (D.C. Mo.1970). Additionally, some of the work under the contract was done by Farmland in Missouri, and payments were sent by Lyle Farms to Farmland in Kansas City, Missouri. These are further factors to support the conclusion that Lyle Farms transacted sufficient business in Missouri to support service. *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd., supra.*

## II.

### Transaction of Business in Missouri by the Individual Defendants

■ The individual defendants seek to distinguish their status from that of the corporate defendant, on the grounds that the individuals were not parties to the Marketing Agreement, but only to the guarantee. They argue that the evidence with respect to negotiations in Missouri relates only to the distribution agreement and that there is no evidence that any negotiations occurred in Missouri with respect to the guarantee.

This attempted distinction is utterly unrealistic. The Marketing Agreement and the guarantee were interrelated aspects of an integrated transaction. The guarantee would never have been executed had the Marketing Agreement not been agreed upon. Therefore, negotiations for the Marketing Agreement necessarily "contributed to the consummation and execution of" the guarantee. *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd., supra* at page 1219.

■ Defendant Sally V. Jones further attempts to distinguish her situation from that of her husband on the ground that she personally was never in Missouri and there is no evidence of agency on her behalf by her husband or any other representative of Lyle Farms who did come to Missouri for negotiations. The failure of Sally to be personally present in Missouri and the absence of advance agency on her behalf by those who did come to Missouri is all beside the point. The important fact is that the acts of her husband and other corporate representatives led up and contributed to the consummation of the Marketing Agreement and the related guarantee, and the latter document was signed freely and voluntarily by Sally. These documents and the transaction represented by them put her into position to reap benefits as a major stockholder of Lyle Farms. By executing the guarantee agreement, she adopted and ratified the negotiations which led up to it. *State ex rel. Peoples Bank v. Stussie, supra.*

## III.

### Application of forum non conveniens

■ The doctrine of forum non conveniens is to be applied only with caution; and unless the balance of equities is strongly in favor of not forcing these defendants to trial in Missouri, Farmland's choice of Missouri as the forum for this litigation should not be disturbed. *Loftus v. Lee*, 308 S.W.2d 654 (Mo.1958); *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 462 F.2d 998, 1000 (8th Cir. 1972).

■ Although Farmland is a Kansas corporation, its principal office and place of business is in Kansas City, Missouri, and in that real sense it is a resident of Missouri. Moreover, the Marketing Agreement contains a provision that its terms "shall be governed and construed according to the laws of the State of Missouri." These factors militate heavily against application of the doctrine of forum non conveniens. *American Institute of Marketing Systems, Inc. v. Clarke*, 469 S.W.2d 937 (Mo.App.

1971); *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, district court opinion at l. c. 1222.

The pendency of the litigation in the federal courts of New Jersey and Illinois does not require a different result. Neither of those federal cases includes Lyle Farms as a party. Even more importantly, both of those cases litigate rights and duties under a completely different contract from the one involved here. While the pleadings in the federal courts do make light reference to the dog food distributorship, that reference is purely tangential and is of no real consequence.

The dismissal of Farmland's petition on the ground of forum non conveniens constituted an abuse of discretion.

### IV.

*Propriety of Remedy by Mandamus*

■ Defendants argue that Farmland has an adequate remedy by appeal and that therefore remedy by mandamus does not lie. Whatever the merits of that argument academically, it has no bearing at this late stage of these proceedings. This court has already issued its alternative writ, the issues have been fully briefed and argued and it would be wasteful of judicial resources to decline to proceed to a determination of the merits. *State ex rel. Mayweather v. Bondurant*, 538 S.W.2d 953, 955 (Mo.App.1976), and cases there cited.

The alternative writ is made peremptory.

All concur.